**In re SPECIAL FEBRUARY, 1975 GRAND JURY.**

No. 75 GJ 1586.

United States District Court,
N. D. Illinois, E. D.

Oct. 2, 1975.

Kevin M. Forde, Ltd., Chicago, Ill., for petitioner.

Thomas P. Johnson, Asst. U. S. Atty., Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

PARSONS, Chief Judge.

Presently pending is a request by Mr. Kevin M. Forde that this Court admit Mr. Joseph H. Thibodeau to practice before this Court for the limited purpose of representing certain witnesses before the Special February, 1975 Grand Jury. Mr. Forde is an attorney and a member in good standing of the bar of this Court, while Mr. Thibodeau is an attorney and a member in good standing of various bars of both state and federal courts outside of Illinois. The request apparently stems from this Court's ruling of June 17, 1975, the factual allegations noted therein, and Attorney Thibodeau's subsequent personal inquiries into and judgments on those factual allegations. The Government Attorney urges this Court to deny the request. He argues that the established facts reflect a potential conflict of interest warranting denial. The conflict is said to arise in Thibodeau's attempt to simultaneously represent subject (i. e. target) and non-subject witnesses before the grand jury and in the corporate assumption of all his clients' legal fees when the corporation itself is a subject of the grand jury's investigation. The Government Attorney asks this Court only to disqualify Thibodeau from representing non-subject witnesses.

### I.

Certain provisions of the A. B. A. Code of Professional Responsibility seem relevant, though not binding, on the issue of multiple representation. Canon 5 states: "A lawyer should exercise independent professional judgment on behalf of a client." This is simply a statement of an axiomatic norm, "expressing in general terms the standards of professional conduct expected of lawyers in their relationships with the public, with the legal system and with the legal profession." See Preliminary Statement to the Code.

The Code sets out particular guidelines under Canon 5, which are said to be "aspirational in character" and to "represent the objectives toward which every member of the profession should strive." See Preliminary Statement to the Code. One such guideline states:

"The professional judgment of a lawyer should be exercised . . . solely for the benefit of his client and free of compromising influences and loyalties." Ethical Consideration 5–1 (hereafter EC 5–1).

Another guideline states:

"If a lawyer is requested to undertake or to continue the representation of multiple clients having potentially different interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with different interests, and there are few situations in which he would be justified in representing in litigation multiple clients with potentially different interests. If a lawyer accepted such employment and the interests did become actually differing, he would have to withdraw from employment with likelihood of resulting hardship on the clients; and for this reason it is preferable that he refuse the employment initially. On the other hand, there are many instances in which a lawyer may properly serve multiple clients having potentially differing interests in matters not involving litigation. If the interests vary only slightly, it is generally likely that the lawyer will not be subjected to an adverse influence and that he can retain his independent judgment on behalf of each client; and if the interests become differing, withdrawal is less likely to have a disruptive effect upon the causes of his clients." EC 5–15.

Yet another guideline states:

"In those instances in which a lawyer is justified in representing two or more clients having differing interests, it is nevertheless essential that each client be given the opportunity to evaluate his need for representation free of any potential conflict and to obtain other counsel if he so desires.

Thus before a lawyer may represent multiple clients, he should explain fully to each client the implications of the common representation and should accept or continue employment only if the clients consent." EC 5–16.

The Code also sets out particular rules under Canon 5, which are said to be "mandatory in character" and to "state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." See Preliminary Statement to the Code. One such rule states:

"A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except . . a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." Disciplinary Rule 5–105 (hereafter DR 5–105).

In the instant case, there is no indication at the present time that Attorney Thibodeau has failed to heed the aforementioned canon, guidelines and rule on multiple representation. It is alleged in support of the request for admission (though without accompanying affidavit) that Thibodeau exercised independent professional judgment in deciding to represent two grand jury witnesses, as well as certain potential witnesses, in that he disclosed the possible effects of such representation to each of his clients and received consent to continue from each. Furthermore, it cannot now be said that any of Thibodeau's clients are currently "in litigation."

The Government Attorney appears to concede, at least at one point, Thibodeau's compliance with the Code's provisions on multiple representation. He states:

"We have never challenged the ethics of Mr. Thibodeau. He may well be acting within the perameters of the Canons of Ethics, yet be involved in a conflict of interest sufficient to warrant his exclusion from representing clients before the grand jury. The court's supervisory power is in no way limited by state or national canons of ethics."

But, he suggests that the conflicts and/or potential conflicts between the subject and non-subject clients create at least "the appearance of impropriety," citing Canon 9, which he feels the Court should eliminate by denying the pending request. The Court finds it hard to conceive of how the multiple representation by Thibodeau is, by itself, improper or before whom any assumed impropriety would even appear. Further, the Ethical Considerations and Disciplinary Rules developed under Canon 9 lend no support to the Government Attorney's position.

Case law on multiple representation cited by the Government Attorney does not appear to mandate a denial of the pending request. In *Randazzo v. U. S.,* 339 F.2d 79 (5th Cir. 1964), the appellate court did bar an attorney from continuing with multiple representation. Yet, assuming there was knowledge by the client of the multiple representation problem (which cannot be properly assumed from the facts outlined in the decision), it seems that the client was still denied effective counsel because it appears that the various alternatives and possible effects of multiple representation were never fully discussed or explained to him. Furthermore, the appellate court in *Randazzo* specifically noted that the disqualified attorney was "solely" interested in and dedicated to litigating the constitutional question and that such a temperament rendered his representation incomplete. Implicit in the court's decision was a finding that the disqualified attorney had denied complete and effective representation to one client in order to protect the interests of another, though the Government had not alleged any improper professional conduct. In the instant case, it appears that each of Thibodeau's clients has been fully apprised of the multiple representation and of its possible effects, has consented to continued representation, and has thus not been deprived of "complete representation . . . (i. e.) a meaningful consideration of the alternatives." *Randazzo, supra,* 339 F.2d at 81.

The case of *In Re: Grand Jury 75–2* (S.D.Fla., Jan. 15, 1975) lends some support to the Government Attorney's position on the multiple representation problem. Yet the Florida Court was not concerned with attorney Gopman's simultaneous representation of several labor union officers; rather, it was concerned with his prior relationship with the various unions. It well may be that Mr. Gopman sought to represent the officer under investigation (i. e., a subject witness) as well as officers who were not themselves being investigated (i. e., non-subject witnesses). It should be noted that Gopman had "expressed his willingness to withdraw as counsel for the individual witnesses," though under terms found unacceptable by the government and the court. Here, no such willingness has been expressed under any terms. Also, there has been no indication here of any direct relationship between Thibodeau and Mid-Continent prior to or during the grand jury's investigation.

In the case of *In re Grand Jury Investigation, Nicola Guthrie, Witness,* GJ 75–5 MIA (S.D.Fla., July 9, 1975), the Court ordered a certain law firm to disassociate itself from representing any witness called before a particular grand jury. The basis of that Court's decision is somewhat unclear due to the brevity of the Court's order. However, it does appear that the order was not based upon the government's objections to the firm's concurrent representation of subject and non-subject witnesses. The Court effectively precluded the firm from representing any witnesses, including Thomas D. O'Malley, a primary subject of the grand jury investigation. The Court's order seems to have been based upon the possibility that one of

the firm's lawyers would himself be called as a witness during the investigation. See Canon 5, EC 5–2, and DR 5–101(B). See also DR 5–102.

And the reprimand issued in the case entitled *In the Matter of Abrams,* 56 N.J. 271, 266 A.2d 275 (1970) was also not based upon the attorney's simultaneous representation of several witnesses with possible differing personal interests. Rather, it was based upon the "impropriety in the arrangement" the attorney had made regarding payment of his fees by one who was not his client and who had interests conflicting with those of his client.

## II.

On the issue of corporate assumption of the witnesses', potential witnesses', and other employees' legal fees, additional provisions of the A. B. A. Code seem relevant. Another guideline under Canon 5 states:

> "A person or organization that pays or furnishes lawyers to represent others possesses a potential power to exert strong pressures against the independent judgment of those lawyers . . . Since a lawyer must always be free to exercise his professional judgment without regard to the interests or motives of a third person, the lawyer who is employed by one to represent another must constantly guard against erosion of his professional freedom." EC 5–23.

Yet another guideline states:

> "A lawyer subjected to outside pressures should make full disclosure of them to his client; and if he or his client believes that the effectiveness of his representation has been or will be impaired thereby, the lawyer should take proper steps to withdraw from representation of his client." EC 5–21.

Another rule under Canon 5 states:

> "Except with the consent of his client after full disclosure, a lawyer shall not:
>
> (1) Accept compensation for his legal services from one other than his client.

(2) Accept from one other than his client any thing of value related to his representation of or his employment by his client." DR 5–107(A).

At the present time there is no indication that Thibodeau failed to follow the Code provisions relating to payment of legal fees. It is alleged in support of the request for admission (though without accompanying affidavit) that Thibodeau had discussed all relevant matters regarding payment of fees with each of his clients; that each had thereafter consented to further representation by him; that each client is individually responsible for any legal fees; and that Thibodeau has never represented the common corporate employer of each, i. e., Mid-Continent Refrigerator Company. Furthermore, it is alleged that the corporate reimbursement of its employees' legal fees would continue regardless of which attorney is chosen, presumedly even if eight separate attorneys were chosen by the eight separate employees.

The Government Attorney suggests that the derivative manner in which Thibodeau is being, and will be, compensated by the company, which itself has been deemed a subject of the investigation, necessitates a denial of the pending request since it creates an appearance of impropriety, as well as a "potential for hindrance of the grand jury investigation" and thus of the public's right "to the benefit and protection of effective criminal investigations unencumbered by attorneys representing conflicting interests." In support of this position, the *Abrams* case, *supra,* is cited though its distinction between the direct and the derivative receipt of fees (noted in this Court's earlier ruling) is minimized. Yet the distinction drawn in *Abrams* is not slight and is not "an empty form," for it recognizes that the possibility of a weakening of an attorney's resolve and/or of an appearance of impropriety is much less likely to occur in situations where the employer assumes the legal expenses incurred by its employees than in situations where the employer has a direct understanding with its employees' attorney(s). And, it can be said that the con-

cerns about the appearance of impropriety in this case are far less compelling than in the *Abrams* case. Here, Thibodeau is only seeking to represent clients who have been subpoenaed before the grand jury; the public is much less likely to learn of Thibodeau's representation (should it be allowed) than of Abrams' representation. Finally, it can be said that the concern about the possible "diminution" of the attorney's "devotion" in *Abrams*, 266 A.2d at 278, was much greater than the concern should be in the instant case. In *Abrams*, the court found a good deal of circumstantial evidence indicating that the attorney had agreed in advance with a particular criminal organization to defend any of its members later charged with criminal violations. The attorney in *Abrams* also seemed to indicate a familiarity with the internal operations of the criminal organization (at one point, he opined from personal knowledge about the relative hierarchical positions of two members within the organization). And, the attorney's testimony in *Abrams* was found to be "flatly contradicted" by two of his clients.

### III.

In light of the foregoing analysis, the Court finds little, if any, precedent in the A. B. A. standards and in the case law to support a disqualification of attorney Thibodeau based solely on his simultaneous representation of so-called subject and non-subject witnesses or solely on the manner in which his legal fees are being paid. Yet, the Government Attorney argues that although each of these facts, by itself, may not justify disqualification, the combination of the two is sufficient to warrant a denial of the pending request.

In ruling on the pending request, this Court must begin by recognizing the general proposition that in a criminal case, a defendant has the right to retain counsel of his own choosing. *U. S. v. Liddy*, 348 F.Supp. 198, 199 (D.D.C.1972) and cases cited therein. Likewise, a witness subpoenaed before the grand jury generally has the right to choose his own counsel. Of course, it becomes the court's duty to ascertain whether or not choice of counsel was intelligently made in situations where more than one defendant or more than one witness is represented by the same attorney. *Glasser v. U. S.*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Liddy, supra.* In the instant case, since the initial motion of April 23rd was made, it is alleged (affidavits are not supplied) that both subpoenaed non-subject employee-witnesses, as well as certain subpoenaed subject employee-witnesses and certain non-subpoenaed non-subject employees, have each chosen Mr. Thibodeau after full disclosure of his multiple representation problem and of the subject employer's assumption of legal fees.

Assuming there were intelligent choices, denial of the pending request for admission to practice would be in order if there were a finding of actual conflict of interest among any of Thibodeau's clients at the present time. *Liddy, supra*, 348 F.Supp. at 200. However, there is no basis for such a finding at the present time. As noted earlier, it appears from what is before me that the corporate employer has never been, and is not now, one of Thibodeau's clients and that Thibodeau has never owed any duty to his clients' employer. In explaining what is deemed to be the conflict arising out of the multiple representation of individual employees, the Government Attorney states: "The best interests of the subject are served by minimizing the incriminating testimony, while the best interests of the non-subject are served by full and frank disclosure." Yet, today's subject may be tomorrow's non-subject, and vice versa. Thus, it can be said that any single witness and/or employee may possibly have interests in conflict with any other; therefore, as noted in my earlier ruling, there exists the possibility of conflicting interests between various subjects as well as between subjects and non-subjects. However, disqualification of Thibodeau from the representation of sever-

al subjects is not sought. The Government Attorney has further stated that the harmful effects inherent in Thibodeau's multiple representation "are most clearly evidenced by Mr. Thibodeau's refusal to allow non-subject witnesses to testify or discuss this matter with government investigators without a formal grant of immunity from prosecution" and that "such insistance clearly tends to obstruct this grand jury's investigation to the manifest advantage of Mr. Thibodeau's other clients." However, there is no evidence at this time that Thibodeau's advice to his non-subject witnesses was actually contrary to their best interests; that such advice would not have been given by another attorney who did not also represent a subject witness; or that such advice was purposefully given so as to obstruct the grand jury's investigation and/or to protect others of his clients who were deemed subjects. Notwithstanding the effects of his advice, Thibodeau should not be disqualified because of "unsubstantiated" claims of conflicting interests, *Liddy, supra,* 348 F.Supp. at 200, or because his legal advice merely displeases the Government Attorney or the grand jury.

It is also urged that denial of the pending request would serve to eliminate the appearance of impropriety on Thibodeau's part. I acknowledge that in *State v. Galati,* 64 N.J. 572, 319 A.2d 220, 223 (1974), the court reasoned that "in matters of ethics and professional probity, the cause and effect impact upon the public consciousness is almost, perhaps quite, as important as the actual fact." And, at least one other court has said that "appearances too are a matter of ethical concern." *Abrams, supra,* 266 A.2d at 278. However, I am of the opinion that for purposes of depriving a person of his choice of counsel, there must be actual conflict and not merely the appearance of it. Besides, the public has little if any, knowledge about the present case since it has not progressed beyond the grand jury stage. In fact, Thibodeau himself was apparently unaware of Mid-Continent's assumption of his clients' legal fees until the April 23rd motion was made.

## IV.

In view of the preceding discussion, the Government Attorney's objections to the pending request are overruled at this time. This, of course, is without prejudice to any future objection(s) to continued representation based upon circumstances from which judicially it can be determined that actual conflicting interests exist, or that there exists a purposeful or even actual obstruction of the right of the grand jury to investigate, perhaps caused by repeatedly improper invocations of alleged Fifth Amendment rights. In fact, the real issue may become the fair opportunity of the grand jury to investigate and not the ethics of any attorney. This decision also contemplates that there may be future objection(s) to the conduct of Mr. Thibodeau's client(s) before the Special February, 1975 Grand Jury. For example, legitimate objections may later be forthcoming concerning certain witnesses' invocation of their alleged Fifth Amendment rights. Witnesses are not exonerated from answering questions solely because they assert that in doing so they would be incriminating themselves. See, for example, *Hoffman v. U. S.,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

Accordingly, the pending request that Joseph Thibodeau be specially admitted to practice should be allowed. However, the order granting the request will be effective only after he submits affidavit(s) in support of the request, which will satisfy this Court that intelligent choices of counsel have been made and that no conflict of interest now exists. *Liddy, supra.* Mere allegations of these facts in briefs are insufficient.

It is so ordered and decreed.