**In the Matter of the SPECIAL FEBRUARY 1977 GRAND JURY.**

**Appeal of UNITED STATES of America.**

**No. 78–1520.**

United States Court of Appeals, Seventh Circuit.

Argued June 12, 1978.

Decided Aug. 11, 1978.

S.Ct. 615, 81 L.Ed. 893 (1937). *See also* Hart and Wechsler's *The Federal Courts and the* *Federal System* 396, *et seq.* (Bator, *et al.*, ed. 1973).

Alexandra M. Kwoka, Sp. Atty., U. S. Dept. of Justice, Strike Force, Chicago, Ill., for appellant.

Barry Sullivan, Jenner & Block, Chicago, Ill., for appellee.

Before FAIRCHILD, Chief Judge, SPRECHER and BAUER, Circuit Judges.

BAUER, Circuit Judge.

At issue in this appeal is whether the district court abused its discretion in denying the Government's motion to disqualify Robert L. Tucker from representing multiple witnesses in a federal grand jury proceeding. For the reasons noted below we affirm.

## I.

At the outset we are confronted with the question of whether this Court has jurisdiction to review an order of the district court denying a motion to disqualify an attorney in the course of a federal grand jury proceeding. We begin by noting that such an order is appealable only if it falls within the "collateral order" exception to the final judgment rule of 28 U.S.C. § 1291. As articulated by the Supreme Court, the "collateral order" doctrine applies to a small class of decisions which

> "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

*Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949).

This court and several other circuits have applied the "collateral order" doctrine to orders granting and denying disqualification motions in the context of a civil trial. *See,* e. g., *Fred Weber, Inc. v. Shell Oil Co.,* 566 F.2d 602 (8th Cir. 1977); *Schloetter v. Railoc of Ind., Inc.,* 546 F.2d 706 (7th Cir. 1976); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 496 F.2d 800 (2d Cir. 1974); *Greene v. Singer Co.,* 509 F.2d 750 (3d Cir. 1971), *cert. denied,* 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972); *Tomlinson v. Florida Iron & Metal Co.,* 291 F.2d 333 (5th Cir. 1961). Moreover, at least four circuits have held that orders *granting* a disqualification motion in a grand jury setting are appealable under *Cohen. See In re Investigation Before the February, 1977 Lynchburg Grand Jury,* 563 F.2d 652 (4th Cir. 1977); *In re Gopman,* 531 F.2d 262 (5th Cir. 1976); *In re Investigation Before the April 1975 Grand Jury,* 174 U.S.App.D.C. 268, 531 F.2d 600 (1976); *In the Matter of the Grand Jury Empaneled January 21, 1975,* 536 F.2d 1009 (3d Cir. 1976). It appears, however, that no circuit has yet decided whether an order *denying* a disqualification motion in a *grand jury setting* falls within the "collateral order" exception.

It is our conclusion that such a denial must be viewed as a final order that implicates important rights which would be irretrievably lost if review were denied. *In re Investigation Before the February, 1977 Lynchburg Grand Jury*, 563 F.2d 652, 655 (4th Cir. 1977). We note first in this connection that such an order would not merge in a final judgment, since there is no criminal action pending before the district court. Second, as to the rights at stake, it seems clear that a conflict of interests such as the one alleged in this case poses a substantial threat to the "public's right to the proper functioning of a grand jury investigation." *In re Lynchburg Grand Jury, supra* at 655. For one thing, such a conflict represents a serious ethical impropriety, and thus impugns the integrity of the entire proceeding. Perhaps more importantly, however, an attorney who represents multiple grand jury witnesses with conflicting interests threatens to impede the grand jury's investigative function by depriving it of the full testimony of witnesses—that is, by counseling some clients to pursue a course of action that does not adversely impact on the conflicting interests of others. In this sense, then, the conflict of interests "frustrate[s] the public's interest in the fair and expeditious administration of the criminal laws." *United States v. Dionisio*, 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1972).

While acknowledging that the public's right to the proper functioning of a grand jury is implicated by a conflict of interests situation, the appellee insists that the Government does not have standing to vindicate that right on appeal. We cannot agree. In the first place, it seems clear that the United States Attorney has standing to call the district court's attention to a possible ethical violation concerning the grand jury proceeding:

"When an attorney discovers a possible ethical violation concerning a matter before a court, he is not only authorized but is in fact obligated to bring the problem to that court's attention. Nor is there any reason why that duty should not operate when, as in the present case, a lawyer is directing the court's attention

to the conduct of opposing counsel. In fact, a lawyer's adversary will often be in the best position to discover unethical behavior. . . . Appellant has failed to persuade us that different rules of standing and jurisdiction should apply when criminal proceedings are in the grand jury stage."

*In re Gopman*, 531 F.2d 262, 265–66 (5th Cir. 1976) [citations omitted]. In our view, this same rationale operates to confer standing on the Government to appeal the district court's denial of the disqualification motion. Moreover, quite apart from these ethical considerations, the Government has a substantial interest in removing impediments to the grand jury's investigative function. The United States Attorney, after all, is directed by statute to "prosecute for all offenses against the United States" (28 U.S.C. § 547(1)), and, under the Fifth Amendment, any such prosecution must begin with "a presentment or indictment of a Grand Jury."

We conclude therefore that the denial of a disqualification motion in a grand jury setting falls within the "collateral order" exception of *Cohen*, and that the Government has standing to appeal such a denial.

## II.

■ In addressing the merits of the appeal, we begin by noting our agreement with the Government's position that, in the context of a grand jury proceeding, a disqualification motion *may* be granted without proof of the existence of an *actual* conflict of interest. That is, when the possibility of a conflict becomes great enough, the court may, in the proper exercise of its discretion, move to " 'nip any potential conflict of interest in the bud' " by granting a disqualification motion. *In re Gopman, supra* at 266.

The question before us in this appeal, however, is whether the lower court abused its discretion by denying the disqualification motion. In this connection, the. Government invites us to adopt what amounts to a *per se* rule—namely, the ex-

istence of a *potential* conflict of interests *requires* the district court to grant the disqualification motion. We decline to adopt such an inflexible approach. Rather, we hold that the lower court's exercise of discretion in denying a disqualification motion will not be disturbed on appeal absent a clear showing of either an actual conflict of interests or a grave danger of such a conflict which would impede the proper functioning of the grand jury.

On the record before us, we are not persuaded that such a showing has been made in this case. It is true, as the Government points out, that two of Tucker's clients have been immunized. But, significantly, at the hearing that was held on the disqualification motion, there was no testimony or evidence to indicate that these immunized witnesses can incriminate Tucker's other clients. As an added precaution, but not necessary to the instant determination, the district judge apprised all of the witnesses of the potential for a conflict of interests and each indicated a desire to proceed with joint representation. In this light, we cannot agree that the lower court abused its discretion in denying the disqualification motion. The judgment of the lower court is therefore

AFFIRMED.

FAIRCHILD, Chief Judge, concurring in part, dissenting in part.

Once the merits are reached, I agree with Part II of the opinion. Respectfully, however, I would dismiss the appeal and not reach the merits. I do not agree that the denial of the government's motion is appealable by the government. In my opinion the government has not shown a sufficient interest, separate from the interest of the district court itself.

In a more typical disqualification motion, the movant is attempting to protect himself from an unfair advantage through his adversary's use of counsel who has a conflicting professional duty to movant. If the motion be granted, the adversary is denied the attorney of his choice and the attorney is subjected to a restriction on his practice. If the motion be denied, the movant is subjected to the supposed disadvantage. In any case, an interest of some substance is affected, and if the court's decision be erroneous, the injury cannot be adequately remedied on appeal from the ultimate judgment. Thus the order arguably has *Cohen* finality, and is appealable.

The case before us seems to me to be different. The primary responsibility for conducting the grand jury rests with the court, not the government, and the guardian of the public interest in proper professional conduct is, again, the court and not the government. Surely the government may alert the court to what it considers to be unethical professional conduct, and courts often call upon prosecutors for assistance in presenting such matters for consideration. If another appeals, the prosecution often defends the court's decision. The prosecutor, when acting as the court's delegate, however, has no independent standing to appeal when he differs with the court's own appraisal of the challenged conduct.

The only particularized interest suggested in the present situation is that it will be more difficult for the prosecutor to obtain an indictment if witnesses testify falsely or remain silent on claim of privilege. Possibly the attorney's conflict in duty may cause him to give improper advice. One or more witnesses may commit perjury, or may remain silent without a valid claim of privilege, or conceivably may make a valid claim when such claim is not in his best interest.

It seems to me that the described type of interest is just too tenuous to give a prosecutor the standing, independently of the court, to initiate a proceeding against an attorney or to appeal from the decision of the court that the claim is unfounded.