**In re SPECIAL GRAND JURY and Attorney Stanley P. Gimbel.**

**Misc. No. 700.**

United States District Court,
E. D. Wisconsin.

Nov. 9, 1979.

Joan F. Kessler, U. S. Atty. by Thomas E. Martin, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

Stanley P. Gimbel, pro se, William M. Coffey, Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This action is before me on the motion of the United States government to disqualify Stanley P. Gimbel and the law firm of Gimbel, Gimbel and Reilly from representing witnesses who have been subpoenaed to appear and testify before the grand jury presently investigating payments made and tax deductions taken by the Miller Brewing Company. For reasons which follow, this motion will be denied.

## I. BACKGROUND

The grand jury has subpoenaed numerous past and present employees of Miller to testify with regard to its investigation. Attorney Stanley P. Gimbel and the law firm of Gimbel, Gimbel and Reilly presently represent many of these employees.

Six of Mr. Gimbel's clients have been granted immunity by order of this court after each had indicated that he would invoke his Fifth Amendment privilege against self-incrimination in the absence of such immunity. At least twelve other clients of Mr. Gimbel have similarly indicated that they would invoke their Fifth Amendment privilege in the absence of im-

munity. In addition to the aforementioned employees, Mr. Gimbel represents five past or present officers of Miller as to whom the government states that the possibility of personal criminal liability cannot be eliminated at this time. It appears that these five individuals have also expressed unwillingness to testify in the absence of immunity. At this time none of the latter five individuals has been granted immunity.

Although Mr. Gimbel's services have been retained by individual employees of Miller, the company has agreed to pay for legal services rendered to past and present employees of Miller insofar as they may be questioned concerning matters within the scope of their employment. Mr. Gimbel avers that he has never been retained by Miller, and also states that he has advised Miller's general counsel that Mr. Gimbel would represent the interests of individual employees and not those of the company. The company's general counsel agreed to this arrangement and has averred that the company's offer to reimburse employees for attorney's fees is not limited to those employees who choose Mr. Gimbel as their attorney.

Mr. Gimbel has also averred that he advised each employee who has retained him as counsel of his representation of other employees and the conflicts that might arise as a result of such multiple representation. Mr. Gimbel also states that he advised each employee that Miller had agreed to pay for such representation. However, one employee who testified before the grand jury stated that he was unaware of the fee arrangement between Mr. Gimbel and Miller.

In support of its motion to disqualify Mr. Gimbel from representing witnesses who have been subpoenaed by the grand jury, the government relies on three arguments. I will now consider each of these arguments.

## II. THE FEE ARRANGEMENT

The government contends that the fact that Miller has agreed to pay Mr. Gimbel's fees requires that he be disqualified from representing subpoenaed witnesses. The payment of the attorney's fees for grand jury witnesses by a potential object of the grand jury investigation holds the potential for mischief, but I do not find that the fee arrangement in this case requires Mr. Gimbel's disqualification.

Although not binding on this court, the American Bar Association's Code of Professional Responsibility serves as at least one guidepost in evaluating the propriety of Mr. Gimbel's fee arrangement. Canon 5 of the Code states: "A lawyer should exercise independent professional judgment on behalf of a client." With regard to corporate assumption of employee-witnesses' legal fees a number of "ethical considerations" under Canon 5 seem pertinent:

"A person or organization that pays or furnishes lawyers to represent others possesses a potential power to exert strong pressures against the independent judgment of those lawyers . . . Since a lawyer must always be free to exercise his professional judgment without regard to the interests or motives of a third person, the lawyer who is employed by one to represent another must constantly guard against erosion of his professional freedom." EC 5–23.

"A lawyer subjected to outside pressures should make full disclosure of them to his client; and if he or his client believes that the effectiveness of the representation has been or will be impaired thereby, the lawyer should take proper steps to withdraw from representation of his client." EC 5–21.

The A.B.A. disciplinary rule which directly addresses the issue under consideration permits representation to continue as long as the nature of the fee arrangement has been fully disclosed to the client:

"Except with the consent of his client after full disclosure, a lawyer shall not:
(1) Accept compensation for his legal services from one other than his client.
(2) Accept from one other than his client any thing of value related to his representation of or his employment by his client." DR 5–107(A).

In the case of *In re Special February, 1975 Grand Jury*, 406 F.Supp. 194 (N.D.Ill.1975), the court denied the government's motion to disqualify[1] an attorney for grand jury witnesses whose fees were being paid by the witnesses' employer which was a potential object of the grand jury investigation, after finding "no indication that [the attorney] failed to follow the Code provisions relating to payment of legal fees." Id. at 197.

█ In the instant case, Mr. Gimbel has averred that he has made clear to both Miller and his clients that despite the fee arrangement he is representing the interests of the employees who have retained him and not those of Miller. More importantly, he states that he has fully disclosed the nature of his fee agreement with Miller to his clients.

I am mindful of the fact that one of Mr. Gimbel's clients has testified that he was unaware of the fee agreement. However, I do not believe that this isolated item of testimony justifies Mr. Gimbel's disqualification from this case. The witness in question testified that he was satisfied that Mr. Gimbel's representation was loyal and undivided. Aside from this single piece of evidence, there is nothing in the record to refute Mr. Gimbel's statement that he has discussed his fee arrangements and potential conflicts of interest with his clients.

I conclude that the fee arrangement in this case is permissible since it was adequately disclosed to Mr. Gimbel's clients, and since the latter were made aware of the fact that Miller is willing to pay for legal representation by counsel other than Mr. Gimbel. Mr. Gimbel's affidavit has not been sufficiently undermined to warrant either a contrary ruling or an evidentiary hearing on that topic.

## II. NON–COOPERATION OF WITNESSES

The government argues that Mr. Gimbel should be disqualified from representing subpoenaed witnesses because of the conduct of those witnesses represented by Mr. Gimbel who have been immunized to the present date. Specifically, the government contends that such witnesses have only responded to questions if they possessed "specific recollection," and that in most instances they have denied specific recollection. The government asserts the conduct of these witnesses justifies the disqualification of Mr. Gimbel since it prejudices the chances of other of his clients to receive immunity while represented by him and generally interferes with the grand jury's information gathering process.

█ In my opinion, the government's argument regarding the non-cooperation of Mr. Gimbel's clients does not justify his disqualification in this matter for two reasons. First, the government has not asserted sufficient facts to justify the relief it seeks. Essentially the government alleges that those persons represented by Mr. Gimbel have provided information only in response to direct questions and that in many instances their recollections of past events have faded. The present record does not reveal whether the claims of witnesses that they have no recollection of an event are true or false. Nor does it reveal to the court whether the actions of such witnesses would be substantially different if they were represented by counsel other than Mr. Gimbel. Under these circumstances, the record does not justify the extreme sanction of denying more than a dozen witnesses the counsel of their choice. *See In the Matter of the Grand Jury Empaneled January 21, 1975*, 536 F.2d 1009 (3rd Cir. 1976).

█ Moreover, the government's motion that Mr. Gimbel be disqualified on account of the lack of cooperation demonstrated by his clients overlooks the fact that Congress has supplied a comprehensive statutory scheme constitutionally to compel witnesses to testify before a grand jury.

█ Under the Fifth Amendment, persons have a right to refuse to testify as to matters which would incriminate themselves. At the same time, the government has a right to every person's testimony before the grand jury. The "accommodation between the right of the Government to

compel testimony, on the one hand, and the constitutional privilege to remain silent, on the other, is the immunity statute [18 U.S.C. § 6001 et seq.]." *United States v. Tramunti,* 500 F.2d 1334, 1342 (2d Cir.), cert. denied, 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974).

■ Once immunity has been granted, a witness may be required to testify. If a witness refuses to testify, the district court has the power to find him in contempt. 28 U.S.C. § 1826(a). Statutory sanctions also exist to deal with persons who seek to obstruct justice by corruptly influencing a grand jury witness or by suborning perjury. 18 U.S.C. §§ 1503, 1622. In short, Congress has set up a comprehensive statutory scheme to deal with recalcitrant witnesses and persons interfering with witnesses. In the case before me, I find no reason to supplement these sanctions by disqualifying the chosen counsel of grand jury witnesses. *See In re Investigation Before April 1975 Grand Jury,* 174 U.S.App.D.C. 268, 277, 531 F.2d 600, 609 (D.C.Cir.1976).

### IV. CONFLICT AMONG CLIENTS

The third ground on which the government relies in support of its motion to disqualify Mr. Gimbel is the conflict that might arise out of his representation of multiple parties, some of whom may be subject to future indictments and others who merely have information regarding the subject matter under investigation. The government contends that Mr. Gimbel cannot effectively negotiate immunity on behalf of one client while representing another client who may be potentially incriminated by any such immunized testimony. Accordingly, the government contends that the rights of Mr. Gimbel's innocent clients may be sacrificed to protect those of his clients who may be subject to indictment.

The court of appeals for this circuit has noted that such a conflict may not only unfairly prejudice grand jury witnesses, but the course of a grand jury investigation itself:

"... an attorney who represents multiple grand jury witnesses with con-

flicting interests threatens to impede the grand jury's investigative function by depriving it of the full testimony of witnesses—that is, by counseling some clients to pursue a course of action that does not adversely impact on the conflicting interests of others. In this sense, then, the conflict of interests 'frustrate[s] the public's interest in the fair and expeditious administration of the criminal laws.' *United States v. Dionisio,* 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1972)." *Matter of Special February 1977 Grand Jury,* 581 F.2d 1262, 1264 (7th Cir. 1978).

■ Balanced against the potential conflicts of interest arising from multiple representation is the right of a witness to enjoy the advice of the legal counsel of his choice. *See In re Taylor,* 567 F.2d 1183, 1186 n.1 (2d Cir. 1977). In balancing these interests, I must first determine what type of showing has to be made in order to justify disqualification.

*In Matter of Special February 1977 Grand Jury,* 581 F.2d 1262, 1264 (7th Cir. 1978), the court stated:

"... a disqualification motion *may* be granted without proof of the existence of an *actual* conflict of interest. That is, when the possibility of a conflict becomes great enough, the court may, in the proper exercise of its discretion, move to 'nip any potential conflict of interest in the bud' by granting a disqualification motion. *In re Gopman,* [531 F.2d 262, 266 (5th Cir. 1976)]." (emphasis in original).

While the court's statement indicates that a motion for disqualification may be granted without proof of the existence of an actual conflict, it does not reveal what showing of potential conflict would be sufficient to justify disqualification.

■ To justify disqualification of an attorney representing multiple clients, I believe the government must demonstrate the existence for potential conflict by showing (1) that one or more of the attorney's clients may be guilty of illegal activities and (2) that one or more of the attorney's

clients will testify to information regarding the allegedly illegal activities of other clients. While the government contends that such a standard is too difficult to meet, I believe that it fairly balances the interests involved and is consistent with the decisions of other courts that have considered motions similar to the one at bar.

In *Matter of Special February 1977 Grand Jury*, 581 F.2d 1262 (7th Cir. 1978), the court of appeals affirmed the district court's denial of a motion to disqualify an attorney named Tucker who represented multiple witnesses who had been subpoenaed to appear before a grand jury:

> "It is true, as the Government points out, that two of Tucker's clients have been immunized. But, significantly, at the hearing that was held on the disqualification motion, there was no testimony or evidence to indicate that these immunized witnesses can incriminate Tucker's other clients." *Id.* at 1265.

In the case of *In re Taylor*, 567 F.2d 1183 (2d Cir. 1977), the court of appeals reversed an order of the district court disqualifying an attorney named Erlbaum who represented several subpoenaed witnesses. Just as in the instant case, the government contended that its investigation would be hindered since Mr. Erlbaum would be likely to counsel his clients not to testify in a manner inimical to the interests of his other clients. The court of appeals held that disqualification was not proper until such a theory could be substantiated:

> "The court should not assume that unless appellant testifies as the Government predicts, he will be committing perjury. (citation omitted). Neither should the court assume that an offer of immunity will be ineffective to compel appellant's testimony once the inculpatory nature of the information sought is made clear. (citation omitted). By granting the Government's motion to disqualify Mr. Erlbaum before a single question has been asked of appellant by the grand jury, the court is concluding that Mr. Erlbaum's representation of appellant will frustrate the work of the grand jury.

It is unfairly lending the weight of the court to the Government's efforts to compel appellant's testimony, regardless of competing personal interests, through the disqualification of counsel whose advice to his clients the Government assumes it will not like." *Id.* at 1190.

In the case of *In re Special February, 1975 Grand Jury*, 406 F.Supp. 194 (N.D.Ill. 1975), the government moved to disqualify an attorney who represented several grand jury witnesses under circumstances similar to those at bar. The court denied the government's motion, stating:

> "Notwithstanding the effects of his advice, Thibodeau should not be disqualified because of 'unsubstantiated' claims of conflicting interests, (citation omitted), or because his legal advice merely displeases the Government Attorney or the grand jury.

> \*　\*　\*　\*　\*　\*

> "This, of course is without prejudice to any future objection[s] to continued representation based upon circumstances from which judicially it can be determined that actual conflicting interests exist, or that there exists a purposeful or even actual obstruction of the right of the grand jury to investigate, perhaps caused by repeatedly improper invocations of alleged Fifth Amendment rights." *Id.* at 199.

■ In the instant case, the government has not sufficiently demonstrated that one or more of Mr. Gimbel's clients is likely to be indicted. The government has submitted, *in camera*, documents indicating that certain payments were made by Miller and that several officials of Miller were aware of such payments. The illegality of such payments, however, is supported only by the unsubstantiated assertion of the government that such payments are believed to have been illegal. Moreover, the government has produced virtually no evidence to support the conclusion that some of Mr. Gimbel's clients have information which would incriminate other of his clients. Accordingly, the record before me is insufficient to justify the disqualification of Mr. Gimbel.

Therefore, IT IS ORDERED that the government's motion for an order disqualifying Stanley P. Gimbel and the law firm of Gimbel, Gimbel and Reilly from representing witnesses who have been subpoenaed to testify before the grand jury be and hereby is denied.

IT IS ALSO ORDERED that the government's motion for a hearing to take evidence regarding Mr. Gimbel's fee arrangement be and hereby is denied.