In re **GRAND JURY PROCEEDINGS.**

**Appeal of John DOE.**

**No. 88-1604.**

United States Court of Appeals, First Circuit.

Submitted July 11, 1988.

Decided Oct. 11, 1988.

Elliot D. Lobel, Barry M. Altman and Peckham, Lobel, Casey & Tye, Boston, Mass., on brief, for appellant.

Jeremiah T. O'Sullivan, Sp. Atty., Dept. of Justice, and Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., on brief, for appellee.

Before COFFIN, BOWNES and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Appellant, an immunized witness, appeals from the district court's order of contempt which followed his refusal to testify before a grand jury as directed by the court.

I.

A special grand jury for the District of Massachusetts has been investigating illegal gambling, including official protection allegedly rendered by a corrupt Massachusetts State Police Officer. On February 2, 1988, the grand jury returned an indictment against five individuals, including persons whom we will designate as defendant 1, defendant 2, and State Police Officer. The special grand jury has continued its investigation and now is considering the return of a superseding indictment.

Appellant was subpoenaed to appear before the grand jury on March 23, 1988. He appeared, but claimed his Fifth Amendment right against self-incrimination and refused to answer any questions. On April 22, 1988, upon motion of the government, the district court granted appellant immunity pursuant to 18 U.S.C. §§ 6002, 6003 (1982).

At the time he received immunity appellant was represented by attorney Francis DiMento. DiMento also represents defendant 1, who has been indicted and remains a target in the grand jury's ongoing investigation. The government informally asked DiMento to withdraw from his representation of appellant based on its perception that DiMento's representation of both an immunized witness and a target of the grand jury investigation created a conflict of interest. DiMento refused to withdraw.

On May 11, 1988, appellant was to appear before the grand jury. That day, the government filed a motion to disqualify DiMento as appellant's attorney. At a hearing on the motion held on May 19, appellant maintained that the issue was not ripe. He urged the court to refrain from disqualifying DiMento until appellant had appeared before the grand jury and an actual conflict had materialized. Appellant also suggested that both he and defendant 1 would waive any right to conflict-free counsel in advance.

The district court rejected these arguments, allowed the government's motion, and disqualified DiMento from representing appellant. Appellant next appeared before the grand jury on June 8, 1988, represented by attorney Elliot Lobel. He again refused to testify, claiming that the court's ruling had denied him the right to the counsel of his choice. The grand jury was

adjourned and the government filed a petition for contempt pursuant to 28 U.S.C. § 1826.[1]

Another hearing was held on June 16, 1988. Lobel appeared for the witness. The court reviewed the disqualification order and held the witness in contempt of the immunity order, but stayed its contempt order and granted the appellant's application for bail.[2]

## II.

The United States Supreme Court recently has spoken on the question of when courts may, in the context of a criminal trial, refuse to accept a defendant's waiver of conflict-free counsel and bar the defendant from retaining an attorney who also represents one or more other defendants. *Wheat v. United States,* —— U.S. ——, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). The Court noted that the Sixth Amendment's right to choose one's own counsel is not absolute. *Id.* 108 S.Ct. at 1697. One important limitation on that right is the trial court's interest in ensuring that criminal trials are conducted within ethical and professional standards. *Id.* at 1697–98. Applicable professional standards constrain the representation of multiple clients in the same case.[3]

In the Court's view, if there is a realistic potential for conflict of interest, this systemic concern may override a defendant's Sixth Amendment right freely to choose his lawyer. "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 1697. "Thus, where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented." *Id.* at 1698. Importantly, the Court in *Wheat* allowed trial courts to disqualify counsel "not only in those rare cases where an actual conflict may be demonstrated before trial, *but [also] in the more common cases where a potential for conflict exists*

1. The statute provides in relevant part that "[w]henever a witness in any proceeding before or ancillary to any ... grand jury of the United States refuses without just cause shown to comply with an order of the court to testify ... the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement ... until such time as the witness is willing to give such testimony...."

2. 28 U.S.C. § 1826(b) provides in substance that a person held in contempt pursuant to subsection (a) may be admitted to bail pending appeal so long as his or her appeal appears not to be frivolous or taken for purposes of delay.

3. Local Rule 5(d)(4)(B) of the Local Rules of the United States District Court for the District of Massachusetts adopts Massachusetts Supreme Judicial Court (SJC) Rules 3:07 and 3:08, which prescribe ethical standards for members of the Massachusetts Bar. DR 5–105, contained in SJC Rule 3:07, states in pertinent part:

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests....

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests....

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

Defense Function 6, incorporated in SJC Rule 3:08, states:

Except for preliminary matters such as initial hearings or applications for bail, a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of the several codefendants, *or one of several persons under investigation by law enforcement authorities for the same transaction or series of transactions, including any investigation by a grand jury,* except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation.... (emphasis supplied).

*which may or may not burgeon into an actual conflict* as the trial progresses." *Id.* at 1699 (emphasis supplied). Although a presumption exists in favor of the defendant's selection of counsel, it may be overcome "by a showing of a serious potential for conflict." *Id.* at 1700; *accord In re Special February 1977 Grand Jury,* 581 F.2d 1262, 1264 (7th Cir.1978) ("a disqualification motion *may* be granted without proof of the existence of an *actual* conflict of interest ... when the possibility of a conflict becomes great enough") (emphasis in original).

In deciding that potential conflicts could be grounds for disqualification, the Court emphasized the uncertainties confronting a district court in this context:

> Unfortunately for all concerned, a district court must pass on the issue of whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics.

*Wheat,* 108 S.Ct. at 1699. Because trial judges must navigate in such crepuscular surroundings, the *Wheat* court allowed district courts "broad latitude" in deciding disqualification motions. *Id.* Our review is limited to inquiring whether the lower court has abused its concededly wide discretion. *Id.* at 1699–1700. *Accord In re Special February 1977 Grand Jury,* 581 F.2d at 1264; *In re Gopman,* 531 F.2d 262, 266 (5th Cir.1976). "The evaluation of the facts and circumstances of each case ... must be left primarily to the informed judgment of the trial court." *Wheat,* 108 S.Ct. at 1700.

■ Although *Wheat* involved the Sixth Amendment rights of a criminal defendant, we believe that the standards enunciated in *Wheat* may also apply in the grand jury context, at least to some extent. Although a grand jury witness has no Sixth Amendment right to counsel, courts generally recognize a witness's right to consult with an attorney outside the grand jury room. *United States v. Mandujano,* 425 U.S. 564, 581, 96 S.Ct. 1768, 1779, 48 L.Ed.2d 212 (1976). The showing that must be made in order to burden a grand jury witness's right to choose certain counsel need be no greater than when the question is one of restricting the Sixth Amendment rights possessed by criminal defendants.[4]

We must ask, then, whether appellant's claim to counsel of his choice constituted "just cause" for his refusal to testify, *see supra* note 1, or conversely, whether the district court acted within its broad discretion when it disqualified DiMento, notwithstanding appellant's waiver.

### III.

The court below found an actual conflict of interest "right at this moment because [appellant] has a need for advice before he goes into the grand jury room...." Transcript of May 19, 1988 Hearing at p. 24. Appellant assails the district court's decision on several grounds. First, appellant

---

**4.** We recognize that grand jury proceedings differ from trials in potentially significant ways. For example, judges exercise comparatively little control over the operations of a grand jury, and may lack extensive knowledge of the substance of the proceedings. Disqualification of counsel at trial would likely be more disruptive than at the grand jury stage. We leave it for the district court to determine, in the first instance, whether considerations such as these have any bearing upon motions to disqualify counsel in a particular proceeding.

avers that he does not know defendant 1, and is aware of no facts that would make his interest antagonistic to that of defendant 1. Consequently, appellant argues, DiMento's dual representation does not create a conflict at the present time. As appellant sees it, the district court's order was premature, and should not have been entered unless and until an actual conflict materialized. The government maintains that, despite the lack of a direct link between appellant and defendant 1, a potential conflict of interest exists due to the intertwined relationships between appellant, defendant 1, the state police officer, defendant 2 and an unindicted co-conspirator.

■ Despite the able efforts on the part of the parties and the court to come to grips with this difficult issue, we find that a remand is necessary. First, the Supreme Court decided *Wheat* after the May 19 hearing. As a result, the court and the parties did not benefit from its guidance. Second, on a review of the facts set forth *infra*, we cannot say with certainty that they meet the *Wheat* standard of a *"serious* potential for conflict." 108 S.Ct. at 1700 (emphasis supplied).

As presented by the government, the facts are as follows: Court authorized electronic surveillance in 1987 and 1988 revealed that defendants 1 and 2 allegedly were partners in an illegal gambling business. The State Police Officer supposedly was helping defendant 2 avoid detection by keeping him informed of confidential law enforcement activities. Appellant and the unindicted co-conspirator allegedly owed $250,000 to others in the gambling business, including defendant 2 (defendant 1's putative partner).[5] In 1983, electronic surveillance that intercepted a conversation between defendant 1 and defendant 2 indicated that they were involved in illegal gambling, that defendant 2 was working for appellant in a gambling operation and that defendant 1 was receiving information

concerning planned police raids of illegal gambling establishments. In 1978, electronic surveillance revealed that the unindicted co-conspirator received advanced warning of a pending police raid from the State Police Officer.

Given these facts, the court was concerned that DiMento could not provide independent professional judgment to defendant 1 in the event that DiMento eventually learned that, in fact, appellant had information which could inculpate defendant 1. Although DiMento represented to the court that defendant 1 waived his right to conflict-free counsel, the court was concerned that defendant 1 could not make an intelligent and knowing waiver when he did not know what appellant's testimony would be.[6] It pointed out that even though appellant did not know defendant 1, appellant could still give incriminating information about him, based on the interrelationships of the parties.

The court also was aware that when appellant is called upon to answer questions, DiMento's duty to represent defendant 1 zealously may compel DiMento to suppress disclosure by appellant of information injurious to defendant 1. *See In re Investigative Grand Jury Proceedings on April 10, 1979,* 480 F.Supp. 162, 166 (N.D.Ohio 1979). Although appellant claims that he knows nothing that could incriminate defendant 1, it may be next to impossible to predict that such is actually the case. *See Wheat,* 108 S.Ct. at 1699. If DiMento does learn that appellant is capable of incriminating defendant 1, but fulfils his duty of loyalty to appellant by encouraging him to testify fully, DiMento would compromise his duty of loyalty to defendant 1. Also of importance is DiMento's duty not to disclose to another confidential information received from a client. *See* Model Code of Professional Responsibility EC 4-5. If DiMento receives information from appellant that could aid in the defense of defendant 1, his

---

5. However, there is no evidence to suggest that the debt ran to defendant 1 (DiMento's client) as well as to defendant 2.

6. In fact, as to defendant 1's "waiver" all that appears in the record are representations by others that such a waiver exists. There is nothing from defendant 1 himself, such as an affidavit, indicating a knowing and intelligent waiver.

duty to defendant 1 would be to use and to disclose such information as they formulate their strategy. However, by so doing DiMento would breach his ethical obligation to appellant to not disclose the information. *See In re Investigative Grand Jury Proceedings on April 10, 1979,* 480 F.Supp. at 167.

 Despite these legitimate concerns we cannot say that there exists an actual, or even a serious potential for conflict of interest on the present state of the record. Although the district court stated that it had found an actual conflict of interest, it did not identify any *specific* conflict, actual *or* potential. Rather, because there is no direct link between appellant and defendant 1, the court was forced to rely on inferences. Our concern is that, if we affirm the contempt order in this case, a court could make the requisite *Wheat* finding solely on tenuous inferential relationships. We believe that this is contrary to the holding in *Wheat,* and that generally there must be a direct link between the clients of an attorney—or at least some concrete evidence that one client, such as an immunized witness, has information about another client, such as a target of a grand jury investigation—before the right to counsel of choice is barred by disqualification. *See, e.g., In re Special February 1977 Grand Jury,* 581 F.2d at 1265 (disqualification improper where no "testimony or evidence to indicate" that immunized witnesses could incriminate attorney's other clients); *In re Gopman,* 531 F.2d at 266 (disqualification proper where attorney represented labor union and officials of the union who might be guilty of record-keeping offenses); *In re Special Grand Jury,* 480 F.Supp. 174, 178–79 (E.D.Wis.1979) (to justify disqualification, government must show that one or more of lawyer's clients may be guilty of illegal activity and that one or more of that lawyer's clients "will testify" about such activity); *In re Grand Jury Investigation,* 436 F.Supp. 818, 821–22 (W.D.Pa.1977) (disqualification proper where attorney represented a target of a grand jury investigation and an immunized witness who was an employee of the target).

"While we have recognized that a district court has some discretion to limit the exercise of the right to counsel of choice when insistence upon it would ... interfere with the ethical and orderly administration of justice, ... we have also warned that disqualification of ... counsel should be a measure of last resort." *United States v. Diozzi,* 807 F.2d 10, 12 (1st Cir.1986) (citing *United States v. Cortellesso,* 663 F.2d 361, 363 (1st Cir.1981)). The government bears a "heavy burden" in demonstrating that disqualification is justified, *id.,* and we are not confident that the government has met its burden at this point.

We therefore conclude that the district court must make more specific findings of fact regarding any perceived conflict of interest. We also believe that whether defendant 1 has actually executed a knowing and intelligent waiver of his right to conflict-free counsel should be clarified, *see supra* note 6. As a result, we vacate the order of contempt and remand for further proceedings consistent with this opinion.