**UNITED STATES, Appellee,**

v.

**Israel SANTIAGO–LUGO,
Defendant, Appellant.**

**No. 96–2363.**

United States Court of Appeals,
First Circuit.

Submitted Dec. 7, 1998.

Decided Feb. 3, 1999.

---

Terrance J. McCarthy, by appointment of the Court, on brief, for appellant.

Lena Watkins, Associate Deputy Chief, Narcotic and Dangerous Drug Section, Criminal Division, U.S. Department of Justice, James K. Robinson, Assistant Attorney General, Mary Ellen Warlow, Acting Chief, Narcotic and Dangerous Drug Section, and Guillermo Gil, Acting United States Attorney, on brief, for appellee

Before TORRUELLA, Chief Judge, LYNCH and LIPEZ, Circuit Judges.

TORRUELLA, Chief Judge.

Israel Santiago–Lugo ("Santiago–Lugo") was the lead defendant in a fifty-count indictment returned on June 7, 1995, in the District of Puerto Rico. Count 1 of the indictment charged Santiago–Lugo and thirty co-defendants with conspiracy to possess cocaine base, cocaine, heroin, and marijuana with intent to distribute from 1988 through the date of the indictment, in violation of 21 U.S.C. § 846. Count 2 charged Santiago–Lugo and several co-defendants with engaging in a continuing criminal enterprise, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 848, and further alleged that Santiago–Lugo was the principal administrator, organizer, and leader of the enterprise. Counts 4 through 45 charged Santiago–Lugo and various co-defendants with engaging in monetary transactions in criminally derived property, in violation of 18 U.S.C. §§ 2 and 1957. The jury returned guilty verdicts on all counts. The district court imposed concurrent sentences of life imprisonment as to Count 2 and imprisonment for 10 years as to each of counts 4 through 45, to be followed by concurrent five and three year terms of supervised release. On appeal, Santiago–Lugo challenges procedural rulings made by the trial court. For the following reasons, we affirm.

## BACKGROUND

Santiago–Lugo was the kingpin of a vast drug conspiracy. His actions, and those of his associates, are fully documented in this Court's opinions in *United States v. Eulalio Candelaria–Silva,* 166 F.3d 19 (1st Cir.1999), *United States v. Luis Candelaria–Silva,* 162 F.3d 698 (1st Cir.1998), and *United States v. Marrero–Ortiz,* 160 F.3d 768 (1st Cir.1998).

## DISCUSSION

### I. Anonymous Jury

The need for the district court to empanel an anonymous jury for Santiago–Lugo and his co-conspirators was enunciated by this Court in *Marrero–Ortiz,* 160 F.3d at 776. We see no need to rethink our decision.

### II. Jury Selection

Our discussion of whether the district court violated Santiago's constitutional or statutory rights by excusing fourteen jurors prior to voir dire is set forth in *Eulalio Candelaria–Silva,* 166 F.3d at 28–33. Suffice to say, we held that the district court's actions did not constitute reversible error.

### III. Unfair Trial

■ Santiago–Lugo contends that the placement of a marshal near the defense table during the testimony of Noemí García–Otero, in conjunction with the anonymous jury, resulted in erosion of the presumption of innocence and, therefore, an unfair trial. His claim is without merit.

■ First, Santiago–Lugo did not even object to the marshal's location at trial. In fact, none of the attorneys who inquired about the marshal's presence expressed any concern that his presence would unfairly convey the message that the defendants were dangerous to the jury. Thus, the record offers no indication that the marshal's presence and location was "so inherently prejudicial" as to deny the defendants a fair trial. *See Holbrook v. Flynn,* 475 U.S. 560, 570, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986). Where there is cause for security measures, a "slight degree of prejudice" is tolerated. *See id.* at 571, 106 S.Ct. 1340.

■ Second, with respect to decisions about security at trial, the trial judge "must be accorded broad discretion." *United*

*States v. Darden,* 70 F.3d 1507, 1533 (8th Cir.1995). In this case, the district court indicated that the U.S. Marshals Service had requested the specific placement of the marshal. The judge's dialogue with co-defendants' counsel appeared to reflect more concern about the marshal overhearing what occurred at the defense table than about the marshal's presence imparting to the jury a presumption of dangerousness. Therefore, the court properly exercised its discretion in this matter and certainly did not commit plain error.

## IV. Conflict of Interest

 The presumption in favor of a defendant's counsel of choice "may be overcome not only by a demonstration of actual conflict, but by a showing of serious potential for conflict." *Wheat v. United States,* 486 U.S. 153, 164, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). In each case, however, "[t]he evaluation of the facts and circumstances ... under this standard must be left primarily to the informed judgment of the trial court." *Id.* Furthermore, although a district court must inquire when advised of a potential conflict of interest, the court may rely on counsel's representations that no such conflict exists. *See United States v. Kliti,* 156 F.3d 150, 153 (2d Cir.1998). It is within the district court's discretion to override a defendant's waiver of protection from a conflict of interest. *See Wheat,* 486 U.S. at 164, 108 S.Ct. 1692. Here, the district court properly exercised its discretion in accepting Santiago–Lugo's waiver of the potential conflict of interest identified by the government, and no actual conflict developed with respect to the evidence presented at trial.

The government's conflict of interest pleadings reflected that, prior to Santiago–Lugo's investment in the Magdalena S.E. partnership, his attorney, Humberto Ramírez–Ferrer ("Ramírez"), had been a partner. Although correspondence from a bank was addressed to Ramírez as a partner in Magdalena for the period March–July 1992, all other documentation and information reflected that Ramírez's interest in the partnership terminated prior to Santiago–Lugo's acquisition of a one-half interest in the partnership from José Gómez–Cruz. Thus, the only information linking Ramírez to Santiago–Lugo's financial transactions was the evidence—from which Ramírez's name was redacted—that Ramírez provided and was paid for legal services in conjunction with Santiago–Lugo's purchase of two gas stations.

In arguing that the district court should have disqualified Ramírez as his attorney, Santiago–Lugo highlights their participation in the Magdalena partnership and legal services that Ramírez subsequently provided to Santiago–Lugo—some in relation to Santiago–Lugo's interest in the partnership.

 While it is true that an actual conflict exists where counsel's representation of a defendant precludes the admission of favorable or exculpatory evidence, *see Kliti,* 156 F.3d at 157, this case does not present such a circumstance. First, Ramírez's involvement in Magdalena, including the partnership's purchase of real estate in 1989, was completely unrelated to the transactions relevant to this case. Second, Ramírez withdrew from the partnership prior to Santiago–Lugo's purchase of a one-half interest from Gómez–Cruz for $250,000 in 1992.

There is no information in the record supporting the allegation that Ramírez possessed knowledge bearing on the sources of the illicit funds attributed to Santiago–Lugo. Santiago–Lugo's claim that the district court should have disqualified his attorney is without merit.

## V. Inadequate Representation

 Santiago–Lugo alleges that Ramírez failed to adequately cross-examine the expert accountant, Pablo Montes. He also alleges that another of his attorneys, Erick Morales: (1) failed to bring forth witnesses who could have identified his brother, Raúl Santiago–Lugo, as the leader of the conspiracy; (2) elicited damaging information from a government agent and a cooperating witness; and (3) hurt his cause by arguing with the district court over evidentiary and procedural matters.

However, the appellate record does not indicate that any of these claims was properly raised before and/or addressed by the

district court. Moreover, our review of the record persuades us that the record is not sufficiently developed for us to address the merits of Santiago–Lugo's Sixth Amendment claim at this time. Accordingly, we do not reach it. *See, e.g., United States v. Gray,* 958 F.2d 9, 15 (1st Cir.1992) ("Time and again we have held that a claim of inadequate representation will not be resolved on direct appeal when the claim has not been raised in the district court, unless the critical facts are not in dispute and a sufficiently developed record exists."); *see also United States v. Hoyos–Medina,* 878 F.2d 21, 22 (1st Cir. 1989) ("Fairness to the parties and judicial economy both warrant that, absent extraordinary circumstances, an appellate court will not consider an ineffective assistance claim where no endeavor was first made to determine the claim at the district court level.").[1]

## CONCLUSION

For the above reasons, we **AFFIRM**.

1. Santiago–Lugo may, of course, press his ineffective assistance claim in the district court by way of a collateral proceeding under 28 U.S.C. § 2255.