**UNITED STATES of America,**
**Plaintiff,**

v.

**Angel Torres MORENO**
**[12], Defendant.**

**Criminal No. 12–413 (FAB).**

United States District Court,
D. Puerto Rico.

Signed Feb. 26, 2015.

G. Andrew Massucco–Lataif, Maritza Gonzalez–Rivera, Myriam Y. Fernandez–Gonzalez, Olga B. Castellon–Miranda, United States Attorneys Office, San Juan, PR, for Plaintiff.

Juan F. Matos–De–Juan, Mariangela Tirado Vales Law Office, San Juan, PR, for Defendant.

## MEMORANDUM AND ORDER

BESOSA, District Judge.

Before the Court is the United States' motion to disqualify defendant Angel Torres Moreno's attorney because of an alleged conflict of interest. (Docket No. 1744.) The government's motion includes a request for a hearing on the conflict-of-interest issue. *Id.* at ¶ 7. For the reasons that follow, the government's motion and its accompanying hearing request are both **DENIED.**

## BACKGROUND

Defendant Angel Torres Moreno ("Torres") is one of twenty-two individuals charged in an alleged conspiracy to distribute cocaine out of the San Juan Luis Muñoz Marin International Airport ("SJU") in Puerto Rico. (Docket No. 518.) According to the operative indictment,[1] the purported conspiracy functioned as follows: one

---

1. A grand jury originally issued a sealed indictment against twenty defendants, including Torres, on May 24, 2012. (Docket No. 3.) The government subsequently modified the charges to include another count and two additional defendants. On March 15, 2013, a grand jury returned the superseding indictment, which named Torres in Counts I and II. (Docket No. 518.)

group of participants "package[d], transport[ed] and deliver[ed] suitcases loaded with kilograms of cocaine to the American Airlines cargo area at [SJU]," where another group of participants, who were American Airlines employees, "ensure[d] that those suitcases were smuggled onto American Airlines aircrafts destined [for various] cities [on] the [East Coast] of the United States." *Id.* at p. 3.

Torres is charged with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846; and aiding and abetting in the possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Docket No. 518 at pp. 3–7.) Although Torres was set to be tried with the first group of defendants in early March 2014, he requested to be transferred to the second trial group alleging medical reasons in late January 2014. (Docket No. 1086.) The Court granted his request. (Docket No. 1186.) Torres's trial is currently set to begin on March 16, 2015. (Docket No. 1737.)

On February 10, 2015, the government filed a motion to disqualify Torres's attorney, Juan Matos de Juan ("Matos"), alleging a conflict of interest. (Docket No. 1744.) Matos has represented Torres since his arraignment on June 11, 2012. (Docket Nos. 52, 56.) The government claims that one of its witnesses against Torres, Jose Melendez ("Melendez"), a former member of the Puerto Rico Police Department ("PRPD") and agent with the Drug Enforcement Agency ("DEA") task force, is a current employee of Matos. (Docket No. 1744 at ¶ 2.) Melendez apparently retired from the PRPD in February 2013, began working as a private investigator, and was hired by Matos on a contract basis at some time thereafter. *Id.*; Docket No. 1758 at ¶¶ 9–10. According to the government, Melendez was one of the "main investigators in this case," who "participated in the execution of search warrants, interviewed government witnesses and made video recordings." (Docket No. 1744 at ¶ 2.) The government considers Melendez to be an "important witness" because "his testimony will be directly related to [defendant Torres's] participation in [the DEA's] cocaine sham operation" conducted during the agency's investigation. *Id.* The government thus argues that "[Melendez's] testimony in the upcoming trial could represent a legal conflict for [Matos] if he continues representing [Torres,] as it is known in this [d]istrict that Melendez is a member of [Matos's] legal defense team in the majority of his cases." *Id.*

The government provides several, often overlapping, grounds for disqualifying Matos as Torres's attorney. First, the government argues that Matos's professional relationship with Melendez will impede his ability to cross-examine and impeach Melendez. (Docket No. 1744 at ¶ 3.) Second, the government is concerned that Melendez, who was involved in the investigation of this case, may disclose matters that occurred before the grand jury, in violation of the grand jury secrecy rules. *Id.* at ¶ 4. Third, the government asserts that the attorney-client privilege protects communications between defendant Torres and Melendez, because Melendez is an employee of Torres's attorney. *Id.* at ¶ 5. Fourth, the government suggests that Matos's representation of Torres creates a conflict of interest, in violation of Model Rule of Professional Conduct 1.7(a)(2). *Id.* at ¶ 6. Fifth, the government questions whether Matos will be able to honor his duty of confidentiality, pursuant to Model Rule 1.6. *Id.* Lastly, the government asserts that Matos's disqualification is appropriate in light of certain policy considerations. *Id.* at ¶ 7. The government proposes that the Court conduct a hearing, pursuant to Fed-

eral Rule of Criminal Procedure 44(c), to "explore the possible conflict of interest." *Id.*

In opposition to the government's motion to disqualify Matos, defendant Torres advances several points. First, Torres maintains that Melendez works as a contractor for Matos but has not been retained to provide his services on this particular case. (Docket No. 1758 at ¶¶ 13–14.) Second, with respect to Matos's ability to cross-examine Melendez adequately, Torres argues that Matos will cross-examine Melendez to the full scope of his testimony, which Torres believes is limited. *Id.* at ¶¶ 23–29. Third, with respect to his attorney's willingness to impeach his own employee, Torres maintains that the government has not disclosed any impeachment material as to Melendez in this case and notes that Matos has previously cross-examined Melendez in a criminal case where the government likewise provided no impeachment material. *Id.* at ¶¶ 30–34. Fourth, as to the grand jury secrecy rules, Torres contends that the government does not address whether Melendez even testified before the grand jury and that, in any event, Melendez has not discussed with Matos his grand jury participation (or lack of it) or that of any other witness. *Id.* at ¶¶ 35–38. Fifth, regarding his attorney's duty of confidentiality, Torres contends that Matos owes no such duty to Melendez. *Id.* at ¶¶ 39–41. Finally, defendant Torres informs the Court that Matos discussed with him the government's motion to disqualify and that he explicitly opposes any request to remove his attorney. *Id.* at ¶¶ 42–43. Torres is, nonetheless, amenable to a hearing on the matter, pursuant to the government's request. *Id.* at ¶ 44.

### STANDARD

A motion to disqualify a defendant's counsel concerns the defendant's exercise of a constitutional right. The Sixth Amendment guarantees that in criminal prosecutions "the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. In interpreting this constitutional principle, the Supreme Court has held that the defendant's right to counsel includes the right to choose who will represent him. *See United States v. Gonzalez–Lopez,* 548 U.S. 140, 144, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006); *Wheat v. United States,* 486 U.S. 153, 159–60, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). A criminal defendant is entitled to a presumption favoring his chosen counsel. *See Wheat,* 486 U.S. at 159–60, 108 S.Ct. 1692.

The Sixth Amendment right of a criminal defendant to have an attorney of his own choosing, however, is not absolute. *United States v. Lanoue,* 137 F.3d 656, 663 (1st Cir.1998). Indeed, the right to choice of counsel is necessarily circumscribed in some respects. *See Wheat,* 486 U.S. at 159, 108 S.Ct. 1692 (listing examples). For instance, a defendant's choice of counsel is limited by conflict-of-interest rules. *See id.* at 159–60, 108 S.Ct. 1692. The presumption in favor of the defendant's counsel of choice evaporates if the government can either "demonstrat[e] [an] actual conflict" or "show[ ][a] serious potential for conflict." *Id.* at 164, 108 S.Ct. 1692. The district court has broad discretion in determining whether a conflict exists and in fashioning an appropriate remedy to avoid it. *See id.* (finding that the evaluation of the facts and circumstances of each case "must be left primarily to the informed judgment of the trial court").

What is more, "[n]otwithstanding the fundamental importance of an accused's right to counsel of his choice," a criminal defendant "cannot unduly hinder the fair, efficient and orderly administration of justice," while exercising this right.

*United States v. Rivera–Hernandez,* 332 F.Supp.2d 423, 430 (D.P.R.2004) (citing *United States v. Panzardi,* 816 F.2d 813, 815 (1st Cir.1987)). Indeed, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat,* 486 U.S. at 160, 108 S.Ct. 1692. Trial courts are thus afforded "some discretion in setting rules and principles and making determinations in order to preserve the highest ethical standards of professional responsibility." *Rivera–Hernandez,* 332 F.Supp.2d at 430 (citing *Panzardi,* 816 F.2d at 816–17).

■ These and other limitations on the right to counsel of choice are tolerable because "the focus of the right is the quality of the representation that the defendant receives, not the identity of the attorney who provides the representation." *Gonzalez–Lopez,* 548 U.S. at 155, 126 S.Ct. 2557 (Alito, J., dissenting); *see also Wheat,* 486 U.S. at 159, 108 S.Ct. 1692 (finding the Sixth Amendment's essential aim "is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers"). Nevertheless, "trial courts are not to unnecessarily obstruct or impede a defendant to be represented by counsel of his choice." *Rivera–Hernandez,* 332 F.Supp.2d at 430. The First Circuit Court of Appeals has cautioned that disqualification of counsel is a "measure of last resort," and has instructed that the government bears a "heavy burden" in demonstrating that such a remedy is justified. *In re Grand Jury Proceedings,* 859 F.2d 1021, 1026 (1st Cir.1988) (internal citations and quotation marks omitted).

## ANALYSIS

### Conflict of Interest

■ The government bases its motion to disqualify on the premise that Matos's representation of Torres creates an "apparent conflict of interest" because Matos employs a former government agent who is slated to testify as a witness for the prosecution in this case. *See* Docket No. 1744 at ¶ 2. In support of its position, the government relies upon Model Rule 1.7, *id.* at ¶ 6, which prohibits a lawyer from representing a client "if the representation involves a concurrent conflict of interest," absent certain exceptions, Model Rules of Prof'l Conduct 1.7(a).[2] In pertinent part, a "concurrent conflict of interest exists" if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a *third person* or by a personal interest." Model Rules of Prof'l Conduct 1.7(a)(2) (emphasis added). For example, "a lawyer's duties of loyalty and independence may be materially limited by ... the lawyer's responsibilities to other persons, such as fiduciary duties arising from a lawyer's service as a trustee, executor or corporate director." *Id.* at cmt. 9. A material limitation is one that poses "a significant risk that [the] lawyer's ability to consider, recommend or carry out an appropriate course of action for [his] client ... as a result of the lawyer's other responsibilities or interests." *Id.* at cmt. 8.

■ The government, however, fails to show that a concurrent conflict of interest

**2.** The standards for the professional conduct of attorneys in this Court are the Model Rules of Professional Conduct adopted by the American Bar Association, as amended. Loc. R. 83E(a).

exists. To begin, the government makes no effort to establish that Model Rule 1.7 contemplates the employer-employee relationship as one that could materially limit a lawyer's ability to be loyal and independent to his client—in other words, that a lawyer as an employer is akin to a lawyer as a fiduciary, trustee, or executor for purposes of the rule. Even if it did, the government provides no conflict that is *concurrent* to this case; Matos attests that Melendez works for him only on a contract, or case-by-case, basis and has not been retained to provide services on this particular matter. *See* Docket No. 1758 at ¶¶ 13–14. While the Court must inquire when advised of a potential conflict of interest, "the [C]ourt may rely on counsel's representations that no such conflict exists." *United States v. Santiago–Lugo*, 167 F.3d 81, 84 (1st Cir.1999). As such, the government has not convinced the Court that Matos has responsibilities to Melendez related to this case such that Matos may be pulled in a direction adverse to his client.

What is more, the government has not shown how the fact of Melendez's *ad hoc* employment for Matos renders Matos unable to consider, recommend, or carry out an appropriate course of action for Torres. The government suggests that Matos's professional relationship with Melendez will impede his ability and willingness to cross-examine and impeach Melendez. *See* Docket No. 1744 at ¶ 3. This allegation, however, does not raise the paradigmatic case of conflict of interest, *i.e.* where a lawyer represents two criminal defendants on related matters. *See, e.g., Reyes–Vejerano v. United States*, 276 F.3d 94, 100 (1st Cir.2002) ("Representation of different defendants in different but related cases by one counsel may give rise to a conflict of interest. For example, one client may stand to gain through negotiations with prosecutors that will injure another, raising concerns of loyalty; or information obtained in the representation of one client may be potentially useful to another, raising concerns of confidentiality." (internal citations omitted)). Nor does the purported conflict put the defense attorney in the ethically precarious position of having to cross-examine a former client. *See, e.g., United States v. Alfonzo–Reyes*, 592 F.3d 280, 294 (1st Cir.2010) (upholding district court's decision to disqualify attorney where "her representation may have placed her in the position of having to cross-examine her former client, a witness with whom she shared confidences protected by attorney-client privilege").[3] Rather, the purported "conflict" in this case is between an attorney's relationship with his criminal defendant client and his role as a provisional employer to an investigator who is also a witness for the prosecution.

In support of its contention that a conflict of interest exists here, the government describes, in a conclusory fashion, the possibility that Matos will be hesitant to "attack the credibility of [Melendez,] a member of his legal firm." (Docket No. 1744 at ¶ 3.) The government essentially asks the Court to assume that Matos's ability to cross-examine a government witnesses will necessarily be curtailed on account of his ephemeral professional ties with the witness, without revealing any specific fact demonstrating as much. The

---

**3.** Even in those cases, where the defense counsel is entangled with duties to multiple clients in overlapping matters, disqualification is not automatic. *See, e.g., In re Grand Jury*, 859 F.2d at 1026 (finding district court should not have disqualified attorney in the absence of evidence suggesting that attorney's former client, an immunized witness on a related matter, had any incriminating or confidential information generating actual or serious potential conflict).

Court declines to make this inferential leap. *Cf. In re Grand Jury*, 859 F.2d at 1026 (finding no "serious potential for conflict" justifying disqualification in dual representation case where only a tenuous inferential relationship between the attorney's former client, an immunized witness, and his current client, the object of the grand jury's investigation, existed). Regardless, the government provides no governing rule, legal principle, or applicable case law in support of its contention that disqualification is warranted where a criminal defense attorney might cross-examine one of his contract employees on a matter for which the employee is not contracted. *See United States v. Morrell–Corrada*, 343 F.Supp.2d 80, 90 (D.P.R.2004) (finding a hypothetical conflict does not meet the "serious potential for conflict" standard, and therefore "cannot serve as a basis for denying a criminal defendant his Sixth Amendment right to counsel of choice").

Having established neither an actual conflict nor the serious potential for one, the government fails to carry its heavy burden of proof as to disqualification. Even if such a conflict existed, defendant Torres informs the Court that Matos discussed with him the government's motion to disqualify and that he explicitly opposes any request to remove Matos as his attorney. *See* Docket No. 1758 at ¶¶ 42–43; *Morrell–Corrada*, 343 F.Supp.2d at 91 ("Where there is neither an actual conflict nor the serious potential for one, the right to counsel free of conflict can be waived.").

### Other Arguments for Disqualification

The government advances several other arguments in support of its motion to disqualify Matos, none of which suffice to warrant the "measure of last resort."

 The government expresses concern that Melendez, who was involved in the investigation of this case, may disclose matters that occurred before the grand jury, in violation of the grand jury secrecy rules. *See* Docket No. 1744 at ¶ 4. Matos submits, however, that Melendez has not discussed the grand jury proceeding with him. *See* Docket No. 1758 at ¶¶ 35–38; *Rivera–Hernandez*, 332 F.Supp.2d at 433 (noting that the statements of attorneys, "who are members of the Bar and knowledgeable of their duties to clients and the court, must be credited absent evidence to the contrary"). Further, considering the nature of Melendez's work for Matos, which is neither full-time nor related to this case, *see* Docket No. 1758 at ¶¶ 13–14, the Court has no reason to believe that Melendez will confer grand jury secrets to Matos in the future. In any event, the government offers no case law in support of the proposition that concern for upholding grand jury secrecy justifies the disqualification of a criminal defendant's attorney.[4]

 The government also asserts, without further elaboration, that the attorney-client privilege applies to communications between defendant Torres and Melendez. (Docket No. 1744 at ¶ 5.) The government may be correct that in some

---

4. In this case, the need to protect grand jury secrecy is arguably diminished, because the grand jury returned the original indictment nearly three years ago. *See In re U.S.*, 441 F.3d 44, 61 (1st Cir.2006) (finding the concerns underling the grand jury secrecy rules— "encouraging prospective witnesses to come forward and testify 'fully and frankly' to the grand jury, without improper influence in the form of threats or inducements; preventing targets of grand jury investigation from being alerted to the scrutiny and fleeing, or attempting to influence grand jurors or witnesses; and assuring that those who are investigated but not indicted are saved from 'public ridicule'"—are "largely gone" once the indictment is public).

circumstances the attorney-client privilege extends to communications between a client and non-lawyers, such as his attorney's employees; however, the government does not establish that Torres and Melendez ever had such a relationship, particularly where Torres's attorney did not contract Melendez to work on Torres's case. *See* Docket No. 1758 at ¶ 14; *United States v. Bisanti,* 414 F.3d 168, 170 (1st Cir.2005) (finding defendant's attorney-client privilege claim "depends on his showing that [his accountant] was acting as his attorney as to the statements admitted"); *cf. United States v. Bravo–Fernandez,* 756 F.Supp.2d 184, 199 (D.P.R.2010) (finding no attorney-client privilege existed between defendant and his "legislative advisor," where defendant "had no reasonable belief that he was being provided legal advice by a licensed attorney"). What is more, the attorney-client privilege protects only "those communications that are confidential and are made for the purpose of seeking or receiving legal advice." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.),* 348 F.3d 16, 22 (1st Cir.2003). Here, Matos stipulates that the only time Melendez spoke to Torres about the case was in Melendez's capacity as a government witness and at the behest of the prosecution. *See id.* at ¶ 16. Because Torres has not communicated with Melendez in confidence, let alone for the purposes of seeking or receiving legal advice, the attorney-client privilege is inapplicable. At any rate, the government does not explain how the mere existence of an attorney-client relationship between Torres and *Melendez,* if one existed, would require disqualification of *Matos* as Torres's attorney.

■ The government raises a similarly flawed argument in questioning whether Matos will be able to honor his duty of confidentiality, pursuant to Model Rule 1.6.

*See* Docket No. 1744 at ¶ 6. Model Rule 1.6 provides that "[a] lawyer shall not reveal information relating to the representation of a client," unless an exception otherwise permits. *See* Model Rule of Professional Conduct 1.6(a). The government, however, gives no information indicating that Matos has or will reveal confidential information regarding defendant Torres. Moreover, to the extent the government implies that Matos has a duty of confidentiality to Melendez, *see* Docket No. 1744 at ¶ 6 (asking whether "[Matos] will be able to honor his obligation to protect [Melendez's] confidences or information provided by him when he cross-examines him"), the government is simply wrong, as Model Rule 1.6 is manifestly directed at the client-lawyer relationship. Stated otherwise, Matos cannot breach a duty he does not owe. Either way, the government makes no effort to tie any purported breach of confidentiality to its request for disqualification.

Finally, the government asserts that disqualification is appropriate in light of policy considerations, such as "maintain[ing] public confidence in the legal profession," "protect[ing] against disclosure of confidential information gained in the course of an attorney-client relationship," as well as "protect[ing] against disclosure of . . . information gained by [agent Melendez,] . . . who will testify against one of the clients of the legal firm where [h]e works." (Docket No. 1744 at ¶ 7.) In raising these points, the government merely restates previously asserted arguments, which the Court has addressed and rejected.

### Request for Hearing

■ The government requests a hearing, pursuant to Federal Rule of Criminal Procedure 44(c), to "explore the possible conflict of interest." (Docket No. 1744 at ¶ 7.) Defendant Torres likewise expresses his willingness to submit to a hearing on

the matter. (Docket No. 1758 at ¶ 44.) The object of a Rule 44 hearing, however, is to explore possible conflicts attendant to *joint representation,* a circumstance absent here. *See* Fed.R.Crim.P. 44(c)(2) ("The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation."). Because Rule 44 is inapplicable, and in light of the Court's determination that no conflict of interest otherwise exists in this case, the Court denies the government's hearing request.

## CONCLUSION

In accordance with the foregoing, the government's motion to disqualify defendant Torres's attorney for conflict of interest and its accompanying request for a hearing, (Docket No. 1744), are **DENIED.**

**IT IS SO ORDERED.**